UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BETTY L. MASSEY                                           PLAINTIFF

VS.                              CIVIL ACTION NO. 4:03CV105TSL-MTP

WYETH, INC., FORMERLY
KNOWN AS AMERICAN HOME PRODUCTS
AND WYETH PHARMACEUTICALS INC.,
FORMERLY KNOWN AS WYETH AYERST
PHARMACEUTICALS, INC.                                    DEFENDANTS


MEMORANDUM OPINION AND ORDER

Defendants Wyeth and Wyeth Pharmaceuticals Inc. (collectively
Wyeth) have moved for summary judgment pursuant to Federal Rule of
Civil Procedure 56 on the basis of the statute of limitations.
Plaintiff Betty L. Massey has responded in opposition to the
motion and the court, having considered the memoranda of
authorities, together with attachments, submitted by the parties,
concludes that the motion should be granted.

Plaintiff Betty Massey was hospitalized, diagnosed and
treated for heart attacks in August 1994 and in June 1997.  On
December 18, 2004, she filed the present action against Wyeth
contending her heart attacks were caused by her use of hormone
replacement therapy (HRT) medications manufactured by Wyeth which
she took from 1989 until 2002,[1] and demanding recovery under

_____

[1]     In her complaint, plaintiff alleged that she began
taking Prempro, which is a combination estrogen and progestin
drug, in 1989.  However, Prempro was first manufactured in 1995,
after her first heart attack.  In her response to the motion,
plaintiff states that she first began taking Prempro in 1995.  In

various theories of recovery, including products liability claims (including negligence and strict liability), and claims for breach of implied warranty, for negligent and fraudulent misrepresentations and deceptive advertising.  In general, all plaintiff's claims are based on allegations that Wyeth negligently and/or fraudulently promoted its HRT products, which were intended for use in the treatment of menopausal symptoms, as providing a cardiovascular benefit when, in reality, not only was there no cardiac benefit from these drugs but the drugs actually created a cardiac risk, which Wyeth fraudulently concealed.[2]  Wyeth has moved for summary judgment, contending that all of plaintiff's

---

her deposition, plaintiff testified that prior to taking Prempro, she took Premarin, which she began taking in 1979, at the age of 37.  Premarin is an estrogen only drug.  While Premarin was typically given in conjunction with Provera, a progestin HRT drug manufactured by Pfizer, plaintiff testified that she did not take Premarin in combination with any other HRT medication and specifically stated she did not take it in combination with Provera but rather took the Premarin alone.  She testified that at some point, she stopped taking Premarin and started taking Provera.

[2]  This case was originally filed in state court and was removed on the basis of diversity jurisdiction.  Soon after removal, it was transferred to the Multi-District Litigation (MDL) Docket No. 1507: In re Prempro Products Liability Litigation (In re Prempro) before District Judge William R. Wilson, Jr. of the Eastern District of Arkansas.  The case remained pending in the MDL until March 9, 2012, when it was remanded to this court.  Wyeth filed its motion for summary judgment motion promptly after remand from the MDL court.

claims are barred by the three-year statute of limitations in Mississippi Code Annotated § 15-1-49.[3]

The parties agree that the applicable statute of limitations for all of plaintiff's claims is the general three-year statute of limitations set forth in § 15-1-49. See § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."). They also agree that since all plaintiff's claims  seek recovery for a latent injury, they are subject to Mississippi Code Annotated § 15-1-49(2), which establishes a latent injury discovery rule, as follows:

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

---

[3]     Plaintiff disputes Wyeth's characterization in its motion of plaintiff's claims as "products liability claims" based primarily on a failure to warn and argues that Wyeth has moved for summary judgment only on her products liability claims.  In fact, Wyeth has clearly sought summary judgment on all of plaintiff's claims on limitations grounds.
    The court acknowledges plaintiff's argument that Wyeth waived the statute of limitations defense by failing to timely pursue it. The court rejected this same argument in Bryant v. Wyeth, Inc., where it held there was no waiver because Wyeth had raised the defense at a "pragmatically sufficient time," so that the plaintiff was not prejudiced in her ability to respond. 816 F. Supp. 2d 329, 333 (S.D. Miss. 2011) (citations omitted).

Miss. Code Ann. § 15-1-49(2).[4]  However, the parties disagree as to when plaintiff discovered her injury and thus disagree as to when her claims accrued.

Wyeth appears to contend that plaintiff's claims accrued in 1994, when she suffered her first heart attack and was diagnosed with artherosclerotic heart disease/coronary artery disease.[5] Plaintiff, though, insists that while her heart attacks occurred more than three years before she filed suit, her cause of action did not accrue until she discovered the cause of her injury, i.e., until she discovered she had suffered a *legally cognizable injury*, which was not until July 2002, when published reports of the results of a Women's Health Initiative (WHI) study reported (according to plaintiff) an actual increased risk of

---

[4]    Plaintiff does not deny that her products liability claims are covered by these statutes.  However, she argues that her "non-products liability claims, particularly her fraud-based claims" accrue differently for statute of limitations purposes than products liability claims.  That argument is addressed *infra* note 7.

[5]    The court is not entirely certain as to Wyeth's position as to when plaintiff's claims accrued.  It appears to argue that they accrued in 1994, but it also points out that both heart attacks occurred more than three years before suit was filed. However, plaintiff's allegation in her complaint is that Prempro caused her heart attacks.  Since Prempro was not manufactured until 1995, it could not have caused or contributed to her 1994 heart attack.  Thus, plaintiff's claims relating to Prempro could not have accrued prior to her 1997 heart attack.  However, whether her claims accrued in 1994 or 1997 is not dispositive since both heart attacks occurred more than three years before plaintiff filed suit.

4

cardiovascular disease from HRT drugs rather than the supposed benefits Wyeth had claimed.[6]  Plaintiff submits it was only then that she and her doctors knew the promoted cardiovascular benefits were false and that HRT drugs, in fact, posed a danger to her heart.

Plaintiff's argument, that a cause of action involving a latent injury does not accrue under § 15-1-49(2) until the would-be plaintiff discovers or reasonably should have discovered both the injury and the cause of her injury, has been repeatedly rejected by the Mississippi Supreme Court, and by the Fifth Circuit and this court applying the Mississippi Supreme Court's

---

[6]     In 1991, the National Institutes of Health (NIH) commissioned the Women's Health Initiative (WHI) study to examine whether HRT, and particularly estrogen plus progestin, decreased the risk of cardiovascular disease in post-menopausal women.  The study was halted prematurely in July 2002 because an unusually high number of women who were taking HRT medications for purposes of the study developed breast cancer.  Coleman v. Wyeth Pharmaceuticals, Inc., 6 A.3d 502, 507 (Pa. Super. 2010).  The initial results of the study were published in the Journal of the American Medical Association in July 2002, and included the conclusion that the overall health risks exceeded cardiovascular benefits from use of combined estrogen plus progestin for an average 5.2 year follow-up among healthy post-menopausal women.  Lemmon v. Wyeth, LLC, No. 4:04CV01302 ERW, 2012 WL 2848161, 3 (E.D. Mo. July 11, 2012).  That is, the results of the WHI study confirmed the existence of a causal link between combined estrogen plus progestin and breast cancer which exceeded any potential cardiac benefit.  Wyeth does not dispute that the WHI study established no cardiac benefit from the use of Prempro, and in fact, indicated an increased risk of cardiac events during the first few years of treatment with estrogen plus progestin therapy. It points out, though, that the WHI study results did not indicate an increased cardiovascular risk from the use of estrogen alone, and only a small increased risk from combined estrogen plus progestin therapy, primarily in the first year of use.

interpretation of the statute.  See <u>Angle v. Koppers, Inc.</u>, 42 So. 3d 1, 3 (Miss. 2010) (holding that a cause of action for recovery on account of latent disease or injury "accrues upon discovery of the injury, not discovery of the injury and its cause"); <u>Lincoln Electric Co. v. McLemore</u>, 54 So. 3d 833 (Miss. 2010) (holding that "...Section 15-1-49 does not require a plaintiff to know the cause of the injury before accrual of the cause of action[,]" and thus "...knowledge of the cause of an injury is irrelevant to the analysis [under §15-1-49(2)"); <u>Owens-Illinois, Inc. v. Edwards</u>, 573 So. 2d 704, 709 (Miss. 1990) (stating that "[t]he cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease....  Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these facts are not applicable under § 15-1-49(2)..."); <u>Barnes v. Koppers, Inc.</u>, 534 F.3d 357 (5th Cir. 2008) (stating that "[u]nder § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause."); <u>Bryant v. Wyeth</u>, 816 F. Supp. 2d 329, 334 (S.D. Miss. 2011), <u>aff'd</u>, 2012 WL 3854550, 1 (5th Cir. Sept. 5, 2012) (holding that under § 15-1-49(2), a cause of action accrues "when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause"); <u>Hewitt v. Wyeth</u>, No. 5:03CV333TSL-MTP (S.D. Miss. July 7, 2011) (same).  For the

reasons set forth in <u>Bryant</u> and <u>Hewitt</u>, and in all of the cited authorities, the court rejects plaintiff's argument that her claims did not accrue until she first learned, or reasonably could have learned of an alleged causal link between Prempro and cardiovascular events.

Plaintiff next appears to take the position that even if her claims initially accrued in 1994 or 1997, <u>see</u> <u>supra</u> note 5, they re-accrued in 2001 when she suffered another "heart event."  More specifically, she seems to suggest that her claims were timely, since the 2001 "heart event" occurred during the limitations period.  In this regard, plaintiff's medical records reflect that in 2001, she was found to have asymptomatic stenosis (occlusion or blockage) of the left carotid artery, for which she had an endarterectomy to remove the blockage.  However, as Wyeth notes, the stenosis plaintiff developed was not a separate disease but rather a part of the progression of the artherosclerosis, with which plaintiff was first diagnosed in 1994.  Indeed, plaintiff herself states that over the years, she had "continuing and progressive problems with [cardiovascular disease]" and that the 2001 endarterectomy was "from continuing cardiovascular disease." In <u>Kemp v. G.D. Searle & Co.</u>, 103 F.3d 405 (5th Cir. 1997), the plaintiff alleged that use of an interauterine device caused her to develop pelvic inflammatory disease (PID), and later to become infertile.  The court held that the statute of limitation began to

7

run on the date of the PID diagnosis, not from the later date of
the infertility diagnosis since infertility was "merely a sequela
of PID." The same reasoning applies here, and plaintiff's
argument is thus rejected.

In a similar vein, plaintiff argues that her complaint was
timely filed as Wyeth's continued promotion of its products as
providing a cardiovascular benefit and its failing to warn that
Prempro in fact posed a cardiovascular risk, was a continuing
tort. The Mississippi Supreme Court has defined the continuing
tort doctrine as follows:

> [W]here a tort involves a continuing or repeated injury,
> the cause of action accrues at, and limitations begin to
> run from, the date of the last injury, or when the
> tortious acts cease. Where the tortious act has been
> completed, or the tortious acts have ceased, the period
> of limitations will not be extended on the ground of a
> continuing wrong.
>
> A "continuing tort" is one inflicted over a period of
> time; it involves a wrongful conduct that is repeated
> until desisted, and each day creates a separate cause of
> action. *A continuing tort sufficient to toll a statute
> of limitations is occasioned by continual unlawful acts,
> not by continual ill effects from an original violation.*

Stevens v. Lake, 615 So. 2d 1177, 1183 (Miss. 1993) (emphasis in
original) (quoting C.J.S. Limitations of Actions § 177 at 230-31
(1987)). See also Smith v. Franklin Custodian Funds, Inc., 726
So. 2d 144, 148-149 (Miss. 1998) ("[C]ontinuing or repeated
injuries can give rise to liability even if they persist outside
the time period for the initial injury, but ... the defendant must
commit repeated acts of wrongful conduct. We ... will not apply

the continuing tort doctrine when harm reverberates from one

wrongful act or omission.") (citing <u>Stevens</u>).  Plaintiff's theory,

as the court understands it, is that her doctors continued to

prescribe Prempro for her well into the limitations period based

on Wyeth's continued promotion of the drug's cardiovascular

benefits, and that she suffered "continuing damage to her heart"

as a result of taking the drug after she originally became aware

of her heart disease.  However, she has offered no evidence to

support her statement that she suffered "continuing damage to her

heart" from continuing to take Prempro after she was diagnosed

with cardiovascular disease.

Based on the foregoing, the court concludes that, depending

on how her allegations are viewed, all of plaintiff's claims

accrued either in 1994 or, at the latest in 1997.[7]  However,

_____

[7]     The court acknowledges, but rejects plaintiff's argument
that even if her other claims are held to have accrued when she
was diagnosed with heart disease, her "fraud-based claims" did not
accrue until, at the earliest, in July 2002, upon publication of
the WHI study results, since that is the first time she knew, or
could have known, that Wyeth's HRT drugs posed a cardiovascular
risk.  However, the court is not persuaded that a different
accrual rule applies to plaintiff's fraud claims.
    The Mississippi Supreme Court has consistently held that a
cause of action accrues, and the statute of limitations "begins to
run when all the elements of a tort, or cause of action, are
present."  <u>Weathers v. Metro. Life Ins. Co.</u>, 14 So. 3d 688, 692
(Miss. 2009) (quoting <u>Caves v. Yarbrough</u>, 991 So. 2d 142, 147
(Miss. 2008)).  This is consistent with the Mississippi Supreme
Court's more specific holding that a cause of action for fraud
accrues "upon the completion of the sale induced by such false
representation, or upon the consummation of the fraud."  <u>Dunn v.
Dent</u>, 169 Miss. 574, 153 So. 798 (1934).  The elements of a cause
of action for fraud are "(1) a representation, (2) its falsity,

notwithstanding that she filed her complaint more than three years later, plaintiff maintains that her complaint was timely because Wyeth's fraudulent concealment tolled the running of the limitations period.  Mississippi Code Annotated § 15-1-67 provides tolling for fraudulent concealment:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67.  "To establish fraudulent concealment, plaintiff must demonstrate (1) that defendants acted affirmatively to conceal the fraud; and (2) that plaintiffs could not have discovered the alleged fraud with the exercise of due diligence." Liddell v. First Family Financial Servs., Inc., 146 Fed. Appx. 748, 750, 2005 WL 2044555, 1 (5th Cir. 2005) (quoting Stephens v. Equitable Life Assurance Soc'y, 850 So. 2d 78, 82 (Miss. 2003)).

---

(3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth; (8) his right to rely thereon, and (9) his consequent and proximate injury." Trim v. Trim, 33 So. 3d 471, 478 (Miss. 2010) (citation omitted).  Once plaintiff developed heart disease, all of the elements of her fraud claim were present.  However, as hers was a latent injury, her cause of action was subject to the latent injury discovery rule of § 15-1-49(2), pursuant to which her cause of action did not accrue until she discovered the injury, i.e., upon her heart disease diagnosis.  There is no statutory authority for application of a fraud discovery rule or for excepting fraud claims from the latent injury discovery rule of § 15-1-49(2).

10

Plaintiff submits that fraudulent concealment tolling applies in this case because for decades, including before and after she suffered her heart attacks and other "heart events," Wyeth undertook affirmative acts to conceal from plaintiff and her physicians that HRT drugs, including Prempro, do not prevent cardiovascular disease but rather cause it.  The evidence of alleged fraudulent concealment cited by plaintiff concerns nearly exclusively Wyeth's promotion of Premarin and Prempro as providing a protective cardiovascular benefit when it had not been proven that there was any such benefit to the drugs.  She cites at length examples of Wyeth's repeatedly flouting the FDA's admonition to refrain from promoting its HRT drugs as providing a cardiac protective benefit since such representations, having not been properly studied and tested, were unsupportable.  However, although plaintiff purports to have offered ample evidence as to what Wyeth knew or should or could have known regarding whether Premarin or Prempro provided a cardiovascular benefit, she has offered no evidence that Wyeth knew or had reason to know that either drug actually posed a cardiac risk.  In fact, the only evidence plaintiff cites in support of her claim that such risk exists is the WHI study itself.  Yet she has offered no evidence that Wyeth knew or should have known of the risk identified in the WHI study report prior to publication of those results.  Without

11

such knowledge, there could have been no concealment.  It follows that plaintiff cannot establish fraudulent concealment.

Based on all of the foregoing, the court concludes that plaintiff's complaint was not timely filed.  Accordingly, it is ordered that Wyeth's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of January 2013.


                                   /s/Tom S. Lee
                                   UNITED STATES DISTRICT JUDGE

12